We have four argued cases today and one submitted. Council ready to proceed on the first one? You're reserving five minutes? Yes, Your Honor. Okay, I'll let you know when you run up against it and just be aware that I won't stop you. And if you want to use up your rebuttal time, that's up to you. Thank you, Your Honor. I will heed that warning. May it please the Court. We are here today because the District Court committed three legal errors in holding that the claim term at issue. Let me ask you a housekeeping question. Is Independent Claims 7 representative of the asserted claim? Yes. Okay, thank you. The first legal error that the District Court committed was ignoring the unambiguous and dispositive intrinsic evidence. It is a bedrock principle that one looks to the intrinsic evidence first before turning to anything else to understand whether the claims are definite or not. Here, the District Court failed to consider equations 13, 14, and 15 from column 7 of the patent, page 62 of the record. But even assuming that the District Court's factual findings were correct, which we challenge, but even assuming that those were correct, the District Court made a second legal error when it did not square that extrinsic evidence with the intrinsic evidence. Reading the two together does not show any inconsistency. They can be read consistent together. And any other interpretation of that extrinsic evidence is legal error because you cannot use extrinsic evidence to inject ambiguity into the claims where none exists. The final legal error that the District Court committed was applying the wrong legal standard to a determination under 112, paragraph 2, which deals with whether one of ordinary skill in the art with reasonable certainty could determine the scope. Am I correct that nobody's challenging the District Court's construction of the term cylindrical accumulation mode basis function? Correct, Your Honor. We are not. We fully accept... Why are you not? We fully accept that definition. And let me read that in context of the broader claims. Well, the cross-section limitation first recites linearly combining functions that enable description of charge density distribution only on the surface of a cylindrical conductor, but not over the cylindrical conductor's cross-section. Is that right? Correct, Your Honor. The cross-section limitation, however, goes on to recite that the functions are, quote, to approximate a charge density distribution over the cross-section of the cylindrical conductor, right? Correct. Why isn't the cross-section limitation then internally inconsistent? So if you look at the diagram that we have provided on page 6 of our brief, you see that in these equations, going to the preferred embodiment, the accumulation mode basis functions represented in the purple squares calculate what the charge is on the exterior. That S on the inside of those accumulation mode basis functions corresponds to the surface. Radius finding the surface. The interior is set to zero. Zero elsewhere in there. A person of ordinary skill in the art would know that a conductor that you're trying to model for these chips has no charge on the inside. So you don't need to calculate the interior. That is the beauty of this patent. Didn't you take the position that this is not an ideal conductor? Is that true? No, Your Honor. We took the position that the claims are not limited to ideal or non-ideal. In 99.9% of cases, you're going to want to model an ideal conductor. Standing here today, I can't think of an instance you might want to model a bad one, but that's not an issue here. What we're saying is that you're saying that even if these formulas were applied to non-ideal conductors, the formulas are set up to model an ideal conductor. Correct, Your Honor. That is exactly right. The cross-section isn't inherently inconsistent if you're thinking that the slice that involves the cross-section is designed to measure the charge all the way around the perimeter of the cross-section. Why didn't you insist on a claim construction that made that clear? We did. We did insist on it because we thought this might make things less clear for the district court. But we have limited time, limited pages before Your Honor. So you didn't appeal it here? We didn't appeal it here. We don't need to appeal that definition because those accumulation node basis functions, even though we argued below they could be used to calculate the interior, you don't have to. You don't need that in order to succeed on this issue. Because while you're calculating the exterior, you're just setting everything else to zero. Another thing that you could have done possibly was assert that there was a typographical error in your claim, right? But you didn't assert that either, right? We did not. It is not a typographical error. And if you look at the claims themselves, you see there is an internal consistency there. The third code segment talks about linearly combining conduction node basis functions to calculate the current on the interior over a cross-section of a cylindrical conductor. So you're already looking at a cross-section. What are you looking at on a cross-section? Is it the third code segment you're directing us to? Yes. So if you're looking at the cross-section, where are you looking for current? On the inside, okay? The next segment, where are you looking for charge? On the outside of that same cross-section. There is an internal consistency, and that's also borne out. So I'm supposed to know that over a cross-section in the third code segment is interior, and over the cross-section in the fourth code segment is though on the surface. The specification says that exactly, Your Honor. Column 7 says that it starts with a main advantage. But it doesn't say you're approximating a charge density distribution over the cross-section. It says over the surface. Correct. So in the column, it says you are using the cylindrical conduction mode basis function. In the same way that you're using them to get the current on the interior, you're then using them to get charge on the exterior. But how does it make sense to approximate a charge density distribution over the cross-section of the conductor as the limitation recites, when the charge over the cross-section is by definition zero? Let me give you an example. Let's say you have a straw, and somebody asks you to approximate the amount of plastic in that straw. You can cut a cross-section of the straw, measure the plastic on the outside. You know a straw, by definition, has no plastic on the inside, otherwise it's not a straw. And then you use that approximation to figure out what it is over the cross-section. You just calculate the outside, know the inside is nothing, know it's zero. That approximates everything over the cross-section. And that's the same thing that's happening here on a conductor. A person of ordinary skill in the art knows that there's no charge on the inside. You set that to zero. Then you use the conduction mode basis functions to calculate the outside. That approximates everything over the cross-section together. Did you have an expert clarifying that? We did not, Your Honor. Why not? Because the intrinsic evidence... When you read it, it doesn't make any sense until somebody goes through the physics and explains it to you. A person of ordinary... Do you expect the trial judge to know all that? No, Your Honor. We thought we had explained it pretty well just by pointing to the specification, which is not attorney argument. That is intrinsic evidence that we are explaining to the trial judge. And we explain that on pages 1262 through 1265 of the record. I will also say that the arguments as to indefiniteness changed quite a bit from the beginning. It was originally the scope of what the word approximate means, and it continued on. And so by the time we get to oral argument, it's different. But we don't need an expert, Your Honor. And that costs a lot of money. It takes a lot of time. It makes all cases more expensive. When you can look at the intrinsic evidence first, and you can explain it to the trial court, and the trial court also has a special master in this area, we believe that the trial court could see that one of ordinary skill in the art, reading the claims in conjunction with the specification, would understand what these terms mean. You apparently believed wrong. I did. I did. So the next error that the district court made was countenancing the extrinsic evidence over the intrinsic evidence. The extrinsic evidence, as I just explained, does not create any internal inconsistency. It is perfectly consistent with the claims and with the specification. Now, even if one might believe that the extrinsic evidence could create ambiguity, it is improper. Impersonalized media explains this. It is improper to use extrinsic evidence to inject ambiguity into. You think that the district court judge did not see any ambiguity until he considered the extrinsic evidence? Is that what you're suggesting? I thought that he saw ambiguity on the face of the claim, contrasting what the claim says versus what's in the specification. The district court did not say that. The district court did not say he found any ambiguity, because the district court did not even analyze the intrinsic evidence. It recognized that the plaintiff at the time had mentioned equation 13, but recognition of a fact is not analysis of a fact, and it did not grapple with the information in equations 13, 14, and 15 in the same way that in this appeal the FLE has not grappled with them at all. And if you don't go through the analysis of finding that the intrinsic evidence is ambiguous, you can't then say, I'm going to use the extrinsic evidence to understand this. It just ignored it. So our review of this issue is de novo, right? Yes, Your Honor. And our review of this issue, we review district court opinions as their judgments. We're not supposed to go through and pick through and find all the faulty reasoning. We just look and see, does it matter? So why does it matter even if what you're saying is correct? Why does that matter? During your rebuttal time, just so you know. Oh, thank you, Your Honor, because I don't want you all making the same mistake. The intrinsic evidence is the end of the inquiry. If you want to look at the extrinsic evidence, it fully supports the intrinsic. And you can't use the extrinsic to then create ambiguity where none exists. We don't make mistakes. We correct them. I hope you do, Your Honor. With that, I'll reserve the remainder of my time. Thank you. May it please the court, if I can invite the court's attention to the appendix at page 998. So appendix 998 is part of the E-Systems Markman brief in the district court. And at lines 5 to 6 of appendix 998, E-System told the district court, quote, The claims refer to charge density distribution over the cross-section of the cylindrical conductor. This counsels against Mentor's construction. Mentor's construction was that the accumulation functions are limited to the surface of the conductor. And E-System was absolutely correct. The over-the-cross-section language in the claim is inconsistent with construing accumulation function as being limited to the surface. But that is the district court's claim construction. The district court adopted our construction. That construction is not appealed. And therefore, when they said counsels against, they were conceding that if we won the claim construction, the claim was internally inconsistent. The result of that is that under the non-appealed claim construction, this claim is akin to extracting orange juice from an apple, which was the analogy of this court in Trustees of Columbia. Now, in the district court, I pause to correct one misstatement by counsel, two misstatements. One, the specification does not refer to the cross-section, does not define the cross-section of the conductor as being the surface. There's nothing in the specification that says the cross-section is anything but the cross-section. Second, our indefiniteness argument did not change. Dr. Nagel's deposition testimony, which is in the record, explained long before the Markman hearing exactly what we are arguing here today and what we argued on appeal. Do you agree, though, even if the specification doesn't say that the surface is the cross-section? Do you agree, though? I mean, it's not unreasonable for a POSA to think that one way to estimate or model a cross-section is to measure the surface. One way to measure the surface is to estimate the cross-section. I mean, given the explanation here, that's not necessarily beyond what a POSA might understand. I mean, I see the inconsistency you're pointing out. Don't get me wrong, but I don't know that the patent necessarily needed to expressly define the cross-section as the surface or otherwise in order to not find this claim indefinite. Well, Your Honor, first, there was no disagreement in the district court that the cross-section is not the interior of the conductor. In fact, East System's own briefing refers to the cross-section as being the interior of the conductor. There was no doubt about that. And we disagree that it makes sense in the context of a non-ideal conductor. It was undisputed that the conductor here could be ideal or non-ideal. That was actually part of the uncertainty for a skilled artisan. They needed to defend this claim in the context of non-ideal conductors. How do you respond to the point that even for non-ideal conductors, this formula is sufficient? Well, essentially five reasons on that. First, they didn't make that argument in the body of the blue brief. In the blue brief, all they argued was that it made sense in the context of ideal conductors with no charge inside. They did not argue that the equations or accumulation mode functions more broadly could approximate any and all charge density distributions inside of the conductor. Your friend on the other side seemed to imply that in the real world, or I took it this way, I may be wrong, but it seemed to imply that in the real world, almost all of these are in fact ideal conductors. But my recollection from the briefing was the opposite, which is correct. The counsel is correct that in the real world, one would expect that it would be fair to model it as an ideal conductor. But here, everyone agreed that the claims are not so limited, and that's one of the reasons it makes no sense. Let me see if I can understand. I'm slow, so you have to help me. Let me see if I can understand what this case boils down to. The argument is that when someone fully explains what that claim language means technically, it can be understood that the circumference didn't mean what's inside. The slice meant the perimeter. That's the way it seems to be understandable. May I pause you? I believe you meant cross-section, not circumference. I meant cross-section, yes. But the argument in the case is that a person of ordinary skill, in the absence of a full explanation, would be confused, and thus it's indefinite. Is that the case? No, Your Honor. The first premise is not our position. Our position is that there was unrebutted expert testimony that a skilled artisan looking at this could not make sense of it, and for multiple reasons. Could not make sense of it even if it's explained. Absolutely. Could not make sense of it because there is no explanation that would make sense of it. Dr. Nagel explained, for instance, the accumulation surface functions, which the district court construed is not describing charge density inside of the conductor. That it cannot have any meaning inside the conductor. One reason why it's inconsistent is the surface functions are per unit area, whereas the charge density inside a volume, inside a conductor, is per unit volume. And therefore, it's the wrong units. Second, in the district court, they had an analogy to a chocolate bar. And they said, oh, it makes perfect sense to model or to approximate any and all distributions of... I think it was like a Reese's Cup, as a matter of fact. Yes. Which is different than a chocolate bar. I'm an expert in that. Oh, very good. Very good. We won't have the demonstrators here or eat the demonstrators. But nevertheless, the notion is more general. If you model the amount of chocolate or the density distribution of chocolate on the surface, that tells you nothing. Nothing about the chocolate distribution per unit volume inside of the conductor. What if it's empty, like an empty chocolate Easter bunny?  That would be rewriting the claims. If the claims had said, we're going to use the accumulation functions to approximate the charge density distribution on the surface. And we're going to assume that it's zero inside. That would be a very different claim, and this argument would not apply. However, they didn't say that. Instead, they had an error in the claim, plainly an error in the claim. And they tried to paper it over in the district court with two constructions. They argued that the accumulation functions are not limited to the surface. If they had won that, that would have undermined our internal inconsistency. But they lost it and did not appeal. The second construction they tried was the charge density distribution. They tried to say, oh, charge density distribution, that doesn't have to be at every point over a region. It's good enough if you just do the perimeter. They lost that. At Appendix 17, the district court construed charge density distribution as being the distribution at each point in the region. So it has to be over each point in this cross-section. And then we had Dr. Nagel testify. And if I may invite the court's attention to the appendix again. And if I go through some of Dr. Nagel's testimony, which is critical here. At Appendix 707, line 4, quote, I believe the phrase over the cross-section of the conductor is an error, close quote. At Appendix 708, line 12, quote, because it conflicts with all the rest of the specification. And it suggests that somehow it's able to deal with non-ideal conductors where you have a charge density across the entire cross-section of the conductor. Which I do not believe the numerical techniques in this patent can do that. Unrebutted, no inventor, no expert on the other side showed up. Appendix 711. At Appendix 711, at line 8, he summed it up, quote, it makes no sense. At 718, Appendix 718, line 7, he gets into more detail. 718, line 7, quote, if we were talking about a charge density distribution over the cross-section, dot, dot, dot, that suggests that there's a charge inside the conductor. So the second half of the fourth claim element suggests there's a charge inside the conductor. And that suggests it may be a non-ideal conductor. The problem is the first half suggests the exact opposite. The first half says, oh, we're looking at the surface. Assume zero inside. Well, that's an ideal conductor. That is the problem. Can I ask you? So I usually think about indefiniteness as this way. Accused infringer can't tell when or how they infringe because they can't figure out what the claim is covering. Is it covering this or is it covering that? Can you make your argument in those terms for me? Because there is an argument here that what you're really pointing out is more of a written description or enablement problem. I want to hear you describe it as what's more conventional indefiniteness problem. Yes, Your Honor, if I may. And if I may invite the court's attention to Appendix 1138, where we addressed it exactly that way at the Markman hearing. In Appendix 1138, the slide at the top, we show that there are clues for that skilled artisan. Skilled artisan who wants to design around the invention wants to figure out, okay, can I use something in this space for non-ideal conductors? Does this cover non-ideal conductors? There are strong clues in the second half of this fourth claim element that this actually applies to non-ideal conductors or to poor conductors. The second half of the element implies there's charge inside. So that says, oh, this is non-ideal conductors. I better be worried. The claim itself doesn't say it's an ideal conductor, even though the preferred embodiment was. So that tells the skilled artisan, I'm worried it might cover non-ideal. So the question is, the infringement question is whether it covers ideal or non-ideal conductors. That's the only infringement question. Well, no, but that's the primary. If I'm in the laboratory and I want to experiment in this space and I have some non-ideal conductor, I think it's not fair to model my conductor as if all the charge is on the surface. So it's got some charge inside. I don't know if this patent speaks to that or not. Better the analogy. So that's the demonstrative of why there's conflicting clues and it's ambiguous. As a matter of law, in Ray Cohn, 1971, CCPA five-judge panel, and therefore en banc, says it was a very similar fact pattern. It said do X in order to achieve Y, but the patent explained you couldn't achieve Y with X, and the CCPA found that was indefiniteness. Trustees of Columbia, same thing. Although it was stipulated indefiniteness, they explained if there's an internal inconsistency, that's a question of indefiniteness. And extracting orange juice from an apple, clearly an enablement problem, but it's also an indefiniteness problem. Not these days. Perhaps. But it's also an indefiniteness problem, and you don't know how to correct it. Was the orange wrong or was the apple wrong? Was the first half of this claim element wrong or was the second half? And again, the counsels against that I led with is critical here. They acknowledged that the second half, counsels against, are construction of the first half. But then they didn't appeal the first half. So the counsels against, by failing to appeal, it's basically cemented the error in the claim. We can affirm, if that's what you want us to do, we can affirm the trial court on any grounds we find in the case. Not necessarily anything the trial judge said about the case. So if you got an affirmance, would you want it in terms of enablement or indefiniteness or does it matter? It's indefiniteness. We did not brief enablement. We didn't raise enablement. The only one who raised operability was e-System, not us. It's the internal inconsistency, and again, as a matter of logic we submit, as a matter of that skilled artisan in the lab, and as a matter of precedent in Ray Cohn, multilayer components, trustees. And also his term, the intrinsic evidence. The district court started with the intrinsic evidence. The district court looked at the section that has the equations, looked at the definition of accumulation functions there, both in front of the equations and behind, saying accumulation functions are surface functions. Unlike some other functions that did, the conduction function spoke to the inside. The district court noted that. Then turned to the prosecution history, where they said clearly that the accumulation functions are on the surface. And then turned to the dependent claims, more intrinsic evidence, where they referred to charge on, not in. And only then did the district court, later in the analysis, see that Dr. Nagel's unrebutted testimony, which the court made findings on, and those findings were not appealed, no reference to clear error review in the district court. Therefore, we submit that these claims are invalid under Nautilus, which issued after these patents issued. And we'll submit on the briefs on the Section 101 argument. Thank you, Counselor. Thank you. Ms. Slifer, what's wrong with his argument? Yeah, and as Judge Klager pointed out, you could have had an expert. And you told us you chose not to for whatever internal reason. And you haven't rebutted anything that the expert said. Yes, Your Honor. Remembering that attorney argument is not fact. Correct, Your Honor. But intrinsic evidence is not attorney argument either. Intrinsic evidence is intrinsic evidence. And we begin and end the inquiry there. There is no inconsistency between saying that cylindrical accumulation mode basis functions measure charge only at the surface, and then saying that you can use a combination of cylindrical accumulation mode basis functions to approximate charge over a cross-section. I believe I heard Counsel say that the specification doesn't say that the surface is included in the cross-section. Anyone would understand that the cross-section of anything includes both the inside and the outside. This isn't related to math. This isn't conductors. If you take a cross-section of an empty Easter bunny or a Reese's peanut butter cup or a straw, all of those contain the inside and the outside. And you don't have to be explicit about it. We did not use an expert. You're right, Your Honor. But you can begin the inquiry with the intrinsic evidence. And I don't believe I heard my opposing counsel once reference how that zero elsewhere in equations 13, 14, and 15 does anything other than elucidate the question before Your Honors today. If you're wondering how you approximate the charge over a cross-section, the specification shows you calculate what's on the outside, you set the inside to zero, that together gives you charge approximated over a cross-section. You're referring to the written description? Yes, Your Honor, the preferred embodiment, correct, that's in column seven. If there was any question when looking at the claims, there was any possible question of somebody of ordinary skill in the art about how do I do this? Well, they just go back to column seven, they see these three equations, and they say, oh, of course, I would set the interior to zero. I don't have to do these many, many calculations that used to take days to complete. And now by using this patent, it takes you a lunch break to run this modeling because you only have to calculate what's on the outside. Set the inside to zero, you're done. There are a couple of other points that I believe I heard opposing counsel say. I'll just say as to the findings of fact that the district court made, there is really only one. On page 35 of the red brief, they say that there are two, but it's cylindrical accumulation mode basis functions describe charge density only on the surface. We agree, let's take that, we're not appealing that. And then the second one is Dr. Nagel's opinions were not rebutted. That's just like saying the first one's not wrong. It's two halves of the same coin. So we're saying we can live with this finding of fact. There were no findings of fact about units of measurement. And in fact, we've explained why there's no inconsistency with the units of measurement. There's no inconsistency about each point in a region or any finding of fact about it. Because again, if you're setting the inside to zero and you're calculating the outside, then you're approximating for each point in the region. It's approximating, not calculating. And that's the difference here, is if you're trying to figure out how much of something is in an object, that you know that that something only exists on the outside, then you only need to figure out what's on the outside. In a Reese's pita buttercup, you know the chocolate's only on the outside. In an Easter bunny that's hollow, you know that the chocolate's only on the outside, nothing on the inside. And in a straw, the same exact thing. Plastic only on the outside, none on the inside. Thank you, your honors. Thank you.